## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

THOMAS KURTZ
a/k/a THOMAS SHAY,

                                        Plaintiff,

              v.                                                9:22-CV-0487
                                                               (MJK)

SNYDER, et al.

                                        Defendants.

---

THOMAS KURTZ, Plaintiff, *pro se*
JOSHUA T. TERRELL, Asst. Broome County Attorney, for Defendants

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECSION AND ORDER

*Pro Se* plaintiff Thomas Kurtz, a/k/a Tomas Shay, commenced this action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while incarcerated at the Broome County Jail. (Dkt. 47, Second Amended Complaint).

By Decision and Order entered on July 24, 2023, the Court accepted the Second Amended Complaint for filing, found that Plaintiff's Fourteenth Amendment excessive force and failure-to-protect claims against Defendants Snyder, Barnhart, Valls, Tinker, and Wilcox survived *sua sponte* review and required a response, and dismissed Plaintiff's remaining claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). (Dkt. 50).

1

On May 17, 2024, Defendants moved for summary judgment (Dkt. 86) which Plaintiff opposed (Dkt. 89). On February 28, 2025, the Court issued an Order and Report-Recommendation ("R&R") that Defendants' motion for summary judgment: (1) be denied as to Plaintiff's failure to exhaust his administrative remedies; (3) be denied as to Plaintiff's Eighth Amendment excessive force and failure to intervene claims as to Defendants Snyder, Barnhart, and Sergeant Wilcox; and (3) be granted as to Plaintiff's excessive force and failure to intervene claims as to Defendants Tinker and Valls. (Dkt. No. 99). Judge Hurd issued an Order On Report & Recommendation on March 31, 2025, adopting and accepting the R&R in all respects. (Dkt. 101).

On April 16, 2025, Plaintiff filed a Consent to Exercise of Jurisdiction By United States Magistrate Judge. (Dkt. 105).

Presently before the Court is Plaintiff's "Order to Show Cause for Preliminary Injunction and Temporary Restraining Order" ("OTSC") (Dkt. 110) which Defendants oppose (Dkt. 112).[1] Plaintiff seeks the following relief:

> [E]njoining the defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them, are restrained from contact with Thomas Kurtz, refrain from gossip with other corrections officers and inmates to cause

---

[1] The Court notes that paragraphs 1-9 of defense counsel's July 7, 2025 affidavit is a verbatim recitation of the Court's May 5, 2025 text order in this matter. (Dkt. 108). Counsel fails to properly attribute credit for the content of those paragraphs. This is the second time that the Court is pointing out counsel's lack of detail in his submissions to the Court. *See* (Dkt. 99, fn. 3).

hardship while waiting for trial and while he will be at Broome County for his trial and appeal soon.

(Dkt. 110)

The OTSC also seeks a temporary restraining order:

> [E]ffective immediately and pending the hearing and determination of this order to show cause, the defendants, Snyder & Wilcox et. al. and each of their officers, agents, employees, and all persons acting in concert or participation with them, are restrained from, Snyder[']s posse's lawsuit pending against Thomas Kurtz in Broome County NY.

(*Id.*).

This is Plaintiff's third request for the same relief. Plaintiff's prior two motions were denied. (Dkts. 51, 60, 107, 108). Plaintiff's current application is similarly without merit and is denied in its entirety.

First, Plaintiff's application is procedurally defective. Northern District of New York Local Rule 7.1(e), which governs motions for temporary restraining orders, states that all such motions "shall conform to the requirements set forth in Local Rule 7.1(b)(1) and (2)," which require the filing of a memorandum of law and an affidavit. Local Rule 7.1(e) also requires that unless the moving party shows good cause why reasonable advance notice "cannot be used," the moving party must give notice of the motion for a temporary restraining order to the other parties.

Here, although Plaintiff filed a memorandum of law, it is titled "Plaintiff's Memorandum of Law in Opposition to Defendants Motion for Summary

Judgment." (Dkt. 110-2). Plaintiff's submission is more appropriately geared towards a Rule 56 motion than it is to his current request for relief. Absent from Plaintiff's submission is any argument that addresses the elements necessary for injunctive relief. Also, Plaintiff's "Affidavit in Support of Temp. Restraining ORDER" (Dkt. 110-1) is defective because it is not duly notarized or otherwise indicates that it was sworn to under the penalty of perjury. *See Prudential Ins. Co. of Am. V. Payne*, No. 20-CV-3683, 2024 WL 707299 (E.D.N.Y. Feb. 20, 2024). Plaintiff's second affidavit, however, sworn to on January 29, 2025 and filed on June 13, 2025, appears to be properly notarized but is completely devoid of any factual allegations supporting the requested relief.

Second, Plaintiff has not shown a likelihood of success on the merits of his claim. Aside from the issue of immediacy, the legal standard for the issuance of a TRO is the same as for a preliminary injunction. *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction."). A party seeking a preliminary injunction must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002). Plaintiff cannot make any such showing here.

Liberally construed, Plaintiff's application seeks to enjoin Defendants and an unidentified group of individuals at Auburn Correctional Facility (Dkt. 110-3) where he is currently housed "while waiting for trial" **and** while he is at "Broome County for his trial and appeal []." (Dkt. 110). Although the purported OTSC plausibly articulates the specific relief Plaintiff seeks, his submission provides no factual detail to support the same. Plaintiff's submission is silent as to any actual harm he has or may be currently enduring at Auburn Correctional Facility, and if he is, whether that harm is in any manner related to Plaintiff's claims in this action.

Plaintiff's request for injunctive relief as to any future confinement at Broome County Jail is also without merit because it is based purely on speculation, which is insufficient, as a matter of law, to support the same. *See* No. 5:11-CV-1216 (MAD/ATB), *Topolski v. Cotrell*, 2011 WL 6934493, at *1 (N.D.N.Y. Oct. 28, 2011) ("Speculative harm is insufficient to establish irreparable harm.") (citation omitted). As an initial matter, Plaintiff and Defendants are not currently in proximity to one another. Also, glaringly absent from Plaintiff's filing is any concrete proof that he **will** at some future date be housed at the Broome County Jail and if he is, that he **will** be subjected to physical harm from Defendants or anyone else at the Broome County Jail.

Plaintiff's perceived need for injunctive relief is also belied by the affidavit submitted by Lucas Finely, Esq., Deputy District Attorney for Broome County, who states that Plaintiff "has no pending trial involving the Broome County District Attorney's Office" and that although Plaintiff filed a Notice of Appeal on June 13, 2023 regarding Indictment 21-321, the appeal has not been perfected. (Dkt. 112-1, ¶¶, 2, 3 fn. 1). Deputy District Attorney Finely also notes that to the extent any oral argument is necessitated by Plaintiff's July 3, 2025 *pro se* motion to vacate his conviction related to Indictment 21-321, Plaintiff would be produced "from state prison for said appearance and then promptly returned. His presence in Broome County is otherwise not needed." (*Id.*).

Finally, Plaintiff's request that Defendants be enjoined from "contact with [him]" and from "gossip[ing] with other corrections officers and inmates," necessarily requires the Court to interfere with the operations of the prisons which it is reluctant to do. *See Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970) ("Although Federal Courts are reluctant to interfere in the normal processes of state prison administration, they will not hesitate to intervene when action is clearly necessary to protect a prisoner's constitutional rights."). Plaintiff has not made any showing that the Court's involvement with the prison system is currently warranted. Unable to prove that he is likely to succeed on the merits, Plaintiff's

application for injunctive relief, even if procedurally proper, is nevertheless denied without prejudice.

Plaintiff may choose to renew his motion at a later date if the perceived harm becomes imminent and not speculative, and if he can demonstrate a likelihood of success on the merits. Plaintiff is reminded that if he renews his motion, all filings must comply with the Local Rules for the Northern District of New York.

**WHEREFORE,** for the reasons set forth above, it is hereby

**ORDERED,** that Plaintiff's motion for injunctive relief (Dkt. 110) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on Plaintiff at the address the Court has on file, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Dated: July 11, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

2024 WL 707299

2024 WL 707299
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

The PRUDENTIAL INSURANCE
COMPANY OF AMERICA, Plaintiff,

v.

Jessica PAYNE, et al., Defendants.

20-CV-3683 (JS)(JMW)
|
Signed February 20, 2024

**Attorneys and Law Firms**

For Cross-Claimant Jessica Payne: Jessica A. Payne, Pro Se,
2625 Alcatraz Avenue, #103, Berkeley, California 94705.

For Cross-Defendant Erufadica Kema: David Schachter, Esq.,
Law Offices of Schachter, P.C., 74-09 37th Avenue, Jackson
Heights, New York 11372.

MEMORANDUM & ORDER

SEYBERT, District Judge:

 **\*1**  Jessica A. Payne ("Payne") moves pursuant to Rule 56
of the Federal Rules of Civil Procedure ("Rule") seeking
summary judgment (hereafter, the "Motion") (ECF No. 79), [1]
against Erufadica Kema ("Kema"). For the reasons that
follow, Payne's Motion is GRANTED.

[1]
At the December 14, 2023 Motion Hearing (the
"December Hearing"), the parties were put on
notice that the Court could construe Payne's
pre-motion conference letter, the parties' 56.1
statements, and any argument made on the record
as the motion itself (see Dec. 13, 2023 Elec. Order
Scheduling Proceeding.) Thus, in its discretion,
the Court does so, construing Payne's pre-motion
conference request as the motion itself. Going
forwards, the Court refers to the pre-motion
conference request as the "Motion."

FACTUAL BACKGROUND

I. Materials Considered

In connection with Payne's Motion, the Court has considered:
(1) the Motion; (2) Kema's Opposition to the Motion (ECF
No. 82); (3) Payne's Rule 56.1 Statement (Payne's 56.1
Stmt., ECF No. 86); (4) Kema's Rule 56.1 Counterstatement
with additional facts (Kema's 56.1 Counterstmt., ECF No.
88); (5) Payne's Rule 56.1 Counterstatement (Payne's 56.1
Counterstmt., ECF No. 89); and Kema's December 27
supplemental letter addressing standing (Am. Standing Letter,
ECF No. 95). Additionally, at the December Hearing, the
Court afforded both parties an opportunity to expand upon
their arguments in support of, and in opposition to, summary
judgment. [2]

[2]
The Court finds the legal arguments: (1) contained
in the parties' Motion and Opposition; (2)
contained in Kema's Amended Standing Letter;
and (3) made on the record at the December
Hearing, in conjunction with (4) the parties' Rule
56.1 statements and counterstatements, sufficiently
preserves the losing party's position for purposes
of appeal. The Court's assessment is buttressed
by the fact that, after affording Kema an
additional opportunity to address, in writing,
Payne's standing arguments, Kema's Standing
Letter largely consisted of arguments copied and
pasted from her Opposition, which failed to
specifically rebut the standing issues raised by
Payne. Cf. In re Best Payphones, Inc., 450 F. App'x
8, 15 (2d Cir. 2011) (summary order) (affirming
district court's judgment because the district court
did not abuse its discretion in treating a pre-motion
letter as the dispositive motion when the losing
party "had the opportunity to make the arguments
necessary to preserve its [position] for appellate
review" and "ha[d] not pointed to any additional
argument it would have made had it filed full
motion papers").

Unless otherwise stated, a standalone citation to a Rule
56.1 Statement or Counterstatement denotes that either the
parties agree, or the Court has determined, the underlying
factual allegation is undisputed. Further, citation to a party's
Rule 56.1 Statement or Counterstatement incorporates by
reference the document(s) cited therein. The Court deems true
undisputed facts averred to in a party's 56.1 statement
and to which the opposing party cites no admissible evidence
in rebuttal. See Steward v. Fashion Inst. Of Tech., No. 18-
CV-12297, 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16,
2020) ("[P]ursuant to Local Civil Rule 56.1 [the movant's]

Case 9:22-cv-00487-MJK    Document 113    Filed 07/11/25    Page 9 of 23
Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)
2024 WL 707299

statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record." (quoting Knight v. N.Y.C. Hous. Auth., No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007))); Lumbermens Mut. Cas. Co. v. Dinow, No. 06-CV-3881, 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires ... that disputed facts be specifically controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything.") "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s]." McFarlane v. Harry's Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020) (quoting Risco v. McHugh, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012)). Moreover, to the extent any party responds who "lacks information sufficient to form a belief as to the truth of" any statement which the opposing party has supported with citations to the record, the Court deems such statement admitted. See Ezagui v. City of N.Y., 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (deeming statements in party's 56.1 statement admitted where opposing party responded with assertions that it denied knowledge and information sufficient to form a belief as to the truth of the allegations); AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc., No. 06-CV-2142, 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) ("A nonmovant cannot raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information' in part because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." (quoting Stepheny v. Brooklyn Hebrew Sch. for Special Child., 356 F. Supp. 2d 248, 255 n.4 (E.D.N.Y. 2005) (internal quotations omitted))).

II. Facts

A. The Parties and the Alliance Account

**\*2** Giselle Bollmann (hereafter, "Bollmann") "was the named owner of a life insurance account" (hereafter, the "Alliance Account") "opened and funded by Plaintiff Prudential Insurance Company of America" (hereafter, "Prudential") (Payne 56.1 Stmt. ¶ 1.) Through an Information Request Form, in the event of her death, Bollmann could designate beneficiaries who would receive any remaining balance in the Alliance Account. (Payne 56.1 Stmt. ¶ 2.)

The Information Request Form states that if Bollmann did "not designate any beneficiaries, or if all beneficiaries predecease[d] [her], any balance remaining [would] be paid to [Bollmann's] estate." (Information Request Forms, ECF Nos. 1-2, 1-3, 1-4, Exs. B-D, attached to Prudential Complaint.)

Between September 2010 and May 2016, Bollmann "made various designations and changes to the beneficiaries of her Alliance Account." (Payne 56.1 Stmt. ¶ 2.) The first designation, made in September 2010, named "two of Ms. Bollmann's sisters-in-law, Danyula Bollman and Dorothy Kema, and a cousin-in-law, Sonya Mueller," as primary beneficiaries. (Id. ¶ 3(a).) Then, in May 2014, Bollman designated Payne as a secondary beneficiary to the Alliance Account. [3] (Id. ¶ 3(d).) However, in July 2014, Payne was named a primary beneficiary of the Alliance Account, together with Sabina Assmus, and Kirsten Assmus. (Id. ¶ 3(e).) The final beneficiary designation made by Bollmann, in May 2016, named Sabine Assmus, and Jessica Payne as co-primary beneficiaries to the Alliance Account. (Id. ¶ 3(f).) Each beneficiary was entitled to 50% of the proceeds. (Id.) In that designation, Bollmann also named Kirsten Assmus and Paul Engola as secondary beneficiaries to the Alliance Account. (Id.)

[3]    Between September 2010 and May 2014 there were two intervening changes to the beneficiaries of the Alliance Account (see Payne 56.1 Stmt. ¶¶ 3(b)-(c).) Neither of these intervening changes named Kema as a beneficiary (id.)

Payne is Bollmann's first cousin; the two first met "in or around 2005 at a cousin's Christmas party." (Id. ¶ 4.) After the death of Payne's father in 2013, Payne's and Bollmann's relationship grew closer "as they attended salsa and flamenco dance classes together." (Id. ¶ 7.) On average, when Bollmann was alive, Bollmann and Payne communicated with each other on a weekly basis. (Id. ¶ 8.) Additionally, when Payne was in New York, the two would frequently dine or shop together. (Id. ¶ 9.) Bollmann and Payne also traveled together internationally, numerous times, "including to Hamburg, Germany in or around 2014, Frankfurt and Hong Kong in or around 2016, and Scotland in 2017 and 2018." (Id. ¶ 10.) Payne did not have any conversations with Bollmann about the Alliance Account or Bollmann's designation of beneficiaries to same. (Id. ¶ 11.)

Kema is Bollmann's half-sister. (Id. ¶ 12.) Despite periodically listing other siblings as beneficiaries to the

Case 9:22-cv-00487-MJK    Document 113    Filed 07/11/25    Page 10 of 23

Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)
2024 WL 707299

Alliance Account, Kema has never been a listed beneficiary. (Id. ¶¶ 12-13.) Kema does not know why Bollmann never listed her as a beneficiary. (Id. ¶ 40.) Regarding the extent of her contacts with Bollmann, Kema testified she could not recall the nature and frequency of her contact, but that the two contacted each other "many times." (Id. ¶ 38.) When asked, Kema was unable to provide details "about ... Bollmann's handling of her own finances and daily habits after the death of [Bollmann's] husband", and further testified such issues would "be brought up by the appropriate experts in a court of law." (Id. ¶ 36.)

B. Bollmann's Alleged Dementia and Death

Kema lacked personal knowledge concerning Bollmann's mental competency and capabilities or any of Bollman's medical treatments or examinations. (Id. ¶ 42.) Similarly, Kema did not have any personal knowledge of, nor could point to any evidence that, Bollmann suffered from dementia or had received a diagnosis of dementia. (Id. ¶ 44.) When asked why she believed Bollmann had suffered from dementia, Kema testified that her family "has an extensive history with dementia." (Id. ¶ 45.) When asked to expound upon the dementia symptoms Kema observed in Bollmann, Kema's response was that her family "had a large extensive history of dementia with many different symptoms." (Id. ¶ 46.) When pressed with specific questions about Bollmann's mental capacity and her daily habits, Kema was unable to provide specific details. (Id. ¶ 47.)

**\*3** Relatedly, "[d]uring her first deposition, ... Kema was asked if all documents she planned to use in the case had been provided;" Kema responded in the affirmative. (Id. ¶ 50.) Since Kema continuously referred to "notes" she needed to review to answer certain questions at her second deposition, Payne "again requested, on the record, that ... Kema produce any and all documents" showing Bollmann suffered from dementia "and any documentation regarding [Bollmann's] health that pertained to the case." (Id. ¶ 51.) In response, Kema provided: (1) a death certificate for Bollmann's mother, Rosalie Omodi-Engola ("Rosalie"); (2) two medication lists for Rosalie; and (3) the death certificate for Bollmann's uncle, Williams Stephens. (Id. ¶ 52.) Williams Stephens' Death Certificate indicates Dementia was a significant contributing condition to his death but not the underlying cause. (See Williams Stephens' Death Certificate, ECF No. 86-15, Ex. 15, attached to Payne 56.1 Stmt.) Rosalie's Death Certificate makes no mention of dementia; rather, it states the immediate cause of death was cardiopulmonary arrest due to heart disease and that diabetes

was a significant condition contributing to death. (See Rosalie Omodi-Engola's Death Certificate, ECF No. 86-15, Ex. 15, attached to Payne 56.1 Stmt.)

On or around April 18, 2018, Bollmann died intestate. (Id. ¶ 14.) Bollmann was survived by her biological father, Phillip E. Payne ("Phillip") (see Phillip Assignment, Ex. G, ECF No. 88-7, attached to Kema Counterstmt). Bollmann's death certificate lists her cause of death as "undetermined" and the manner of her death as "natural." (Id.) It makes no mention of dementia, although autopsy findings were not available to complete the cause of death. (Id.; see also Kema Counterstmt. ¶ 14.) "On or around May 16, 2018, ... Kema wrote a letter to Prudential requesting that Prudential not release the funds of the Alliance Account to any listed beneficiary, alleging," inter alia, that the designation was made as the result of fraud and/or undue influence. (Id. ¶ 15.) On June 19, 2018, Payne completed and returned a claim form, which was sent to her by Prudential, asserting her claim for the account balance. (Id. ¶ 16.)

On or about July 3, 2018, the State of Connecticut Probate Court (the "Probate Court") "granted administration of the estate of ... Bollmann to ... Payne." (Id. ¶ 17.) As Bollmann's surviving biological parent, Phillip "acknowledge[d], authorize[d] and assign[ed]" his niece, Payne, "to make all necessary arrangements" for Bollmann; Phillip acknowledged Bollmann had previously assigned Payne "Power of Attorney and Executor to be in charge of" Bollmann's "affairs during her living incapacitation and death." (See Phillip Assignment.) On August 10, 2018, through Counsel, Kema submitted another letter to Prudential representing that she was preparing to file Letters of Administration for Bollmann's estate and that there was a hearing scheduled in the Probate Court pertaining to Kema's objections to Payne's application for Letters of Administration. (See Payne 56.1 Stmt. ¶ 21; see also Aug. 10, 2018 Letter to Prudential, Ex. I, ECF No. 1-9, attached to Prudential Complaint.) Kema further represented she had located a doctor who could testify to Bollmann's "dementia at the time of the beneficiary designation." (Aug. 10, 2018 Letter to Prudential.)

On August 28, 2018, the Probate Court held a hearing in connection with the administration of the Bollmann estate. (Payne 56.1 Stmt. ¶ 19.) Kema represents, but cites no evidence confirming, that "[t]he purpose of the August 28, 2018 hearing ... was to discuss the merits of ... Payne's petition and whether she was entitled to be

Case 9:22-cv-00487-MJK    Document 113    Filed 07/11/25    Page 11 of 23

Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)

2024 WL 707299

administrator" of Bollmann's estate on behalf of Phillip, who Kema contends abandoned Bollmann and was therefore an "estranged father." (See Kema Counterstmt. ¶ 18.) As part of her efforts to challenge Payne's appointment as administrator, Kema "submitted to the Connecticut Probate Court a series of affidavits[ 4 ] signed between May 2018 and July 2018 from numerous individuals." (Payne 56.1 Stmt. ¶ 18.) The findings of the Probate Court are not part of the record; however, it is undisputed that, after the hearing, and continuing to the present, Payne remains administrator of Bollmann's estate. (Id. ¶ 19; see also Dec. Hr'g Tr. 6:16-21.)

4    While the Court declines to address the merits of Kema's claims (see infra Part.II), had it done so, the "affidavits," specifically those submitted by Dr. Gloria Lindsey Alibaruho ("Alibaruho"), would have been disregarded. (See First Alibaruho Affidavit, Ex. 6, ECF No. 86-6, attached to Payne 56.1 Stmt.; Second Alibaruho Affidavit, Ex. 10, ECF No. 86-10, attached to Payne 56.1 Stmt.) Neither of Alibaruho's purported "affidavits" is presented in admissible form. Indeed, there is no indication that the statements contained in the "affidavits" were made under penalty of perjury; likewise, there is no jurat or "sworn to me before" language on the notary stamps affixed to Alibaruho's statements. Courts in this Circuit decline to consider such unsworn statements at the summary judgment stage.

By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury.... To be considered in connection with a summary judgment motion, the rule requires that submissions in the form of statements be prepared as affidavits.... Failure to submit materials in this form will cause the submission to be disregarded by the court in its consideration of the pending motion.

DeMars v. O'Flynn, 287 F. Supp. 2d 230, 242 (W.D.N.Y. 2003) (quoting 11 MOORE'S FEDERAL PRACTICE, § 56.14(1)(b) (Matthew Bender 3d ed.)); see also Persaud v. URS Midwest, Inc., No. 06-CV-3119, 2007 WL 4556908, at *6 (E.D.N.Y. Dec. 21, 2007) (noting that medical reports were "not presented in an admissible form" because "[t]here is no jurat, or 'sworn to me before' language, on the notary stamp affixed to the reports"); cf. Flowers v. Abex Corp., 580 F. Supp. 1230, 1233 n.2 (N.D. Ill. 1984) ("Merely notarizing

the signature does not transform a letter into an affidavit.").

PROCEDURAL HISTORY

*4 On August 13, 2020, Prudential brought the instant interpleader action, asking the Court to determine to whom the benefits of the Alliance Account should be paid. (Id. ¶ 24.) In response, Kema alleged: first, the designations made by Bollman were made under duress, undue influence, and/or with a lack of capacity; and, second, Payne had been improperly or fraudulently appointed administrator of Bollmann's estate since Payne had not notified "all necessary parties" of the administration proceedings. (Id. ¶ 25; see also Kema Answer, ECF No. 10.) Kema requested "judgment invalidating the beneficiary designations made by ... Bollmann on or about July 29, 2014 and May 14, 2016" and settlement and adjustment of the claims in her favor. (Kema Answer at 2.) On December 28, 2020, Payne filed her Answer to Prudential's Complaint (see Payne Answer, ECF No. 15), which she amended on January 19, 2021 (see Payne Am. Answer, ECF No. 22.) Payne argued Kema did not have standing to challenge the beneficiary designations because she was never a listed beneficiary and is not an heir to Bollmann's estate; Payne averred the proper heirs were properly notified as to the estate's administration. (Id. ¶ 26; see also Payne Answer, ECF No. 22.) Further, Payne "cross-claimed against ... Kema arguing that the probate matter was barred by res judicata, as the Connecticut Probate Court had rejected ... Kema's claims[.]" (Id.)

On March 18, 2022, Payne filed a pre-motion conference request seeking leave to file a summary judgment motion. Kema opposed the pre-motion conference request. On July 1, 2022, the Court directed the parties to file their respective Rule 56.1 statements, and counterstatements (see July 1, 2022 Min. Entry, ECF No. 84), which they did. On October 4, 2023, the Court scheduled the December Hearing and put the parties on notice that, at the Court's discretion, it could construe the parties' pre-motion submissions, 56.1 statements, and arguments made on the record as the summary judgment motion itself. (See Oct. 4, 2023 Elec. Order Scheduling Proceeding.) During the December Hearing, in addition to expounding upon the arguments made in her pre-motion submissions, Payne reiterated her standing arguments which were previously raised in her Answer and Amended Answer. (See Dec. Hr'g Tr. 4:1-8:14.) The Court permitted Kema the opportunity to oppose Payne's standing argument; however, during the hearing, the Court determined it required further

Case 9:22-cv-00487-MJK   Document 113   Filed 07/11/25   Page 12 of 23

Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)

2024 WL 707299

briefing on Kema's standing. (See Dec. Hr'g Tr. 13:19-15:17.) As such, the Court adjourned the December Hearing to allow the filing of supplemental briefing detailing the basis for Kema's standing to bring her claims notwithstanding she was never a listed beneficiary or Bollmann's heir. (See Dec. Hr'g Tr. 16:17-25.) A status conference was scheduled in this case for February 2, 2024. (See Dec. Hr'g Tr. 23:25-24:20.) On December 27, 2023, Kema filed her Standing Letter. [5] Upon reviewing Kema's Standing Letter, the Court adjourned the February 2 status conference, sine die, as it determined it did "not require any further filings, or arguments" to render its decision (see Jan. 31, 2024 Elec. Order Adjourning Proceeding.) [6]

[5]      An Amended Standing Letter was filed the same day which was, in substance, identical to the original.

[6]      The Court notes that even had it considered the merits of Kema's claims, it would have granted summary judgment to Payne. Indeed, beyond: (1) Kema's speculative statements that she observed general symptoms of dementia in Bollmann, and (2) Alibaruho's unsworn "affidavit", which the Court would have declined to consider (see supra n.4), there was no evidence in the record that Bollmann suffered from dementia or had received a diagnosis of dementia, such that, Bollmann's "mind was so affected as to render [her] wholly and absolutely incompetent to comprehend and understand the nature of the transaction." See N.Y. Life Ins. Co. v. Brown, No. 19-CV-9437, 2021 WL 325857, at *6-7 (S.D.N.Y. Feb. 1, 2021); see also id. (Applying the contract standard to determine whether decedent was mentally competent to change the beneficiaries of his life insurance policy and finding that "[u]nder the contract standard a person is presumed 'competent at the time of the performance of the challenged action and the burden of proving incompetence rests with the party asserting incapacity.'" (quoting Genworth Life Ins. Co. of N.Y. v. Dwaileebe, No. 12-CV-6330, 2017 WL 1046332, at *6 (W.D.N.Y. Mar. 20, 2017))).

Likewise, Kema's undue influence claim can largely be reduced to three arguments, that is: (1) Payne was given a power of attorney over Bollmann and owed her a fiduciary relationship; (2) Payne and Bollmann only knew each other for a short time; and (3) Bollmann suffered from dementia.

> Per New York state law, if a party alleges undue influence, it must show 'that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the [victim] to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist.

Metropolitan Life Ins. Co. v. Giscombe, 19-CV-4463, 2022 WL 2467066, at *9 (E.D.N.Y. Jan. 21, 2022) (quoting Wilton Reassurance Life Co. of N.Y. v. Smith, 21-CV-5131, 2015 WL 631973, at *15 (E.D.N.Y. Feb. 13, 2015)). Here, Kema provides no affidavit or testimony from any witness that contradicts Payne's testimony that Payne and Bollmann never discussed the Alliance Account or Bollmann's designations to same. It is axiomatic that if Bollmann and Payne never discussed the challenged beneficiary designations Payne could not have exercised undue influence over Bollmann to force Bollmann into changing them. Kema's undue influence claim is purely speculative, such speculative and unsupported assertions at this stage cannot create triable issues of fact.

## DISCUSSION

### I. Legal Standard

#### A. Summary Judgment

 **\*5** Pursuant to Rule 56(a), "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020). Additionally, " '[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Id. (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005)). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997). Moreover, "the court is not to make assessments of the credibility of witnesses" on a

Case 9:22-cv-00487-MJK    Document 113    Filed 07/11/25    Page 13 of 23

Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)

2024 WL 707299

motion for summary judgment, as "[c]redibility assessments, choices between conflicting versions of events, and weighing of the evidence are matters for the jury." Id.

On a motion for summary judgment, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). Further, while the court "may consider other materials in the record," it "need consider only the cited materials" in ruling on a summary judgment motion. FED. R. CIV. P. 56(c)(3); see also Pennington v. D'Ippolito, 855 F. App'x 779, 782 (2d Cir. 2021) ("[I]n ruling on a summary judgment motion the court need consider only the cited materials in the parties' submissions." (internal citations and alterations omitted)).

In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sheet Metal Workers' Nat'l Pension Fund v. Vardaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)). When drawing inferences from evidence in the record in favor of the non-moving party, however, a court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1318 (2d Cir. 1990)).

"Once the movant has 'demonstrat[ed] the absence of a genuine issue of material fact ... the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim.' " Pennington, 855 F. App'x at 781 (alteration in original) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)). To do this, "[t]he non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.' " Id.

### B. Standing

Article III of the Constitution extends federal courts' jurisdiction only to cases and controversies. U.S. CONT. art. III, § 2. The Supreme Court has interpreted this to mean that federal jurisdiction exists only when the plaintiff has "a personal stake in the outcome of the controversy." Warth v. Seldin, 422 U.S. 490, 498 (1975) (internal quotations

omitted). To show standing, a plaintiff must demonstrate he has "suffered an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). "For purposes of Article III standing, an 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized[ ] and (b) actual or imminent, not conjectural or hypothetical.' " Lacewell v. Off. of Comptroller of Currency, 999 F.3d 130, 141 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

### II. Analysis

**\*6** Kema asserts she has standing to challenge Bollmann's beneficiary designations because, although Kema was never a listed beneficiary, she is entitled a distribution of Bollmann's estate [7] pursuant to E.P.T.L. § 4.1-1.[8] (Am. Standing Letter at 4.) Specifically, Kema contends Payne "was improperly and/or fraudulently appointed administrator" of Bollmann's estate because Payne, "as the representative of" Bollmann's "biological father, Phillip ... had no standing as either a proposed administrator or distributee of the decedent's estate." (Id.) Kema asserts Bollmann died intestate without spouse or issue. (Id.) In an attempt to sidestep E.P.T.L. § 4.1-1(4) (see supra n.6), Kema contends Phillip should be disqualified from inheriting Bollmann's estate because he "abandoned [Bollmann] as a parent and ... abdicated his duties as the decedents [sic] parent."[9] (Id.) Consequently, Kema claims, as Bollmann's surviving sibling and next in line to inherit Bollmann's estate through the Intestacy Statute, she is entitled to distribution of Bollmann's estate pursuant to E.P.T.L. § 4-1.1(5). (Id.)

7      Kema does not address the fact that invalidation of the May 2016 designation, either on grounds of mental competency or undue influence, would not result in the proceeds of the Alliance Account automatically being paid to Bollmann's estate. Instead, and as noted by Prudential, the invalidation of a later beneficiary designation results in the proceeds of the account being distributed in a manner consistent with the previously valid designation. (See Prudential Complaint, ¶ 23 ("If the Court were to determine that the May 2016 designation is legally invalid, the Account Balance would be payable to Sabine Assmus, Kirsten Assmus, and Jessica Payne, in the shares stated pursuant to the immediately

Case 9:22-cv-00487-MJK    Document 113    Filed 07/11/25    Page 14 of 23

Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)

2024 WL 707299

prior beneficiary designation." (emphasis added)).)
Consequently, by Prudential's understanding of
the Alliance Account, invalidation of the May
2016 designation would result in the July 29,
2014 Information Request Form becoming the
operative designation (id.) Similarly, if both the
May and July designations were invalid, then the
prior May 28th, 2014 designation would become
the operative designation, and so on, until either:
(1) the beneficiaries in the last valid designation
predeceased Bollmann; or (2) all of Bollmann's
designations were found to be invalid.

8      E.P.T.L. § 4-1.1 is New York's intestacy statute (the
       "Intestacy Statute"), which provides that where
       "property of a decedent is not disposed of by will",
       it is to be distributed as follows:
            If a decedent is survived by:
                (1) A spouse and issue, fifty thousand dollars
                and one-half of the residual to the spouse,
                and the balance thereof to the issue by
                representation.
                (2) A spouse and no issue, the whole to the
                spouse.
                (3) Issue and no spouse, the whole to the issue,
                by representation.
                (4) One or both parents, and no spouse and no
                issue, the whole to the surviving parent or
                parents ....
                (5) Issue of parents, and no spouse, issue, or
                parent, the whole to the issue of the parents,
                by representation
       E.P.T.L § 4-1.1(a).

9      E.P.T.L. § 4-1.4 concerns disqualification of
       parents to take intestate shares of deceased
       children. In pertinent part E.P.T.L. § 4-1.4 states:
            No distributive share in the estate of a deceased
            child shall be allowed to a parent if the parent,
            while such child is under the age of twenty-
            one years: (1) has failed or refused to provide
            for the child or has abandoned such child,
            whether or not such child dies before having
            attained the age of twenty-one years, unless the
            parental relationship and duties are subsequently
            resumed and continue until the death of the
            child[.]
       E.P.T.L. § 4-1.4(a)(1).

On paper, Payne initially raised Kema's lack of standing
to challenge the beneficiary designations in her initial
Answer (see Payne Answer at 6.) Payne's standing argument
was reiterated in her Amended Answer (see Payne Am.
Answer at 7-8), but neither Payne, nor any other party
in this case, briefed the issue as part of a motion to
dismiss. [10] Nonetheless, Payne highlighted Kema was never
a beneficiary to the Alliance Account or an heir to Bollmann's
estate. (Id.) Payne further expounded that the Probate Court
had previously adjudicated Kema's administration claims. [11]
(See Dec. Hr'g Tr. 6:5-23; 18:5-6.) Payne contended that the
Probate Court's ruling was res judicata here. (Id.)

10     To the extent Kema appears to suggest that Payne's
       standing argument was waived (see Am. Standing
       Letter at 4), the Court rejects this argument since
       "[t]he question of standing is not subject to waiver."
       United States v. Hays, 515 U.S. 737, 742 (1995).
       Rather, "[b]ecause the question of standing goes
       to the constitutional limitations on the judicial
       Power of the United States, which is limited to
       resolving Cases or Controversies, we are entitled
       at any time sua sponte to delve into the issue
       of standing even if [a party] do[es] not raise the
       issue." Green Haven Prison Preparative Meeting of
       Religious Soc'y of Friends v. N.Y. State Dep't of
       Corr. & Cmty. Supervision, 16 F.4th 67, 78 (2d Cir.
       2021) (quotation marks and case citation omitted)
       (quoting in part U.S. CONST. art. III); see also
       Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56
       (2d Cir. 2016) (explaining standing "may be raised
       by a party, or by a court on its own initiative, at
       any stage in the litigation" (quoting Arbaugh v. Y
       & H Corp., 546 U.S. 567, 571 (2004))); cf. Partner
       Reinsurance Co. Ltd. v. RPM Mortg., Inc., No.
       18-CV-5831, 2020 WL 2904862, at *3 (S.D.N.Y.
       June 3, 2020) (denying defendants' motion to
       dismiss for lack of subject matter jurisdiction, but
       noting defendants had a "right to argue that [the
       plaintiff] lacks contractual standing to pursue the
       relief sought here in a later motion for summary
       judgment or bench trial"); accord Conservation L.
       Found., Inc. v. ExxonMobil Corp., 578 F. Supp.
       3d 119, 119 (D. Mass. Dec. 22, 2021) ("[S]tanding
       can be raised at any time. For example, if a motion
       to dismiss for lack of standing is denied, a case
       may nevertheless be properly dismissed for lack

Case 9:22-cv-00487-MJK    Document 113    Filed 07/11/25    Page 15 of 23

Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)

2024 WL 707299

of standing on a motion for summary judgment or after trial." (citation omitted)).

11    The Court understands Payne's argument in this regard to pertain to Kema's present claims regarding her status as heir, as well as Phillip's rights, and the extent to which they were, or were not, forfeited, under the Intestacy Statute. (See Dec. Hr'g Tr. 16:23-17:2; 18:5-6.)

**\*7** At the December Hearing, Payne re-emphasized (1) her standing arguments, and (2) her contention that Kema's arguments were previously adjudicated during the August 28 status conference before the Probate Court. (Dec. Hr'g Tr. 5:18-6-23.) Payne also made clear that her administration of Bollmann's estate continues to the present day. (Id.) Despite having the opportunity to do so, Kema did not dispute that the Probate Court had previously adjudicated her arguments relating to the administration of Bollmann's estate during the August 28 Status Conference. [12] Indeed, Kema's counsel tacitly acknowledged this was the case. (See Dec. Hr'g Tr. 18:3-6.)

12    Kema's silence in this regard is not unique to the December Hearing, since her Rule 56.1 Counterstatement, likewise, fails to dispute Payne's contention that the arguments relating to the administration of Bollmann's estate, which Kema presently raises, were previously adjudicated by the Connecticut Probate Court. (See Kema 56.1 Counterstmt. ¶¶ 17-19.)

Even accepting as true, for the purposes of arguendo, that: (1) the challenged beneficiary designations are invalid, either because of Bollmann's mental incompetency or due to undue influence; (2) any remaining designation is invalid because it names beneficiaries that predeceased Bollmann; and (3) as a result, the balance of the Alliance Account should be paid to Bollmann's estate, the Court finds Kema cannot show a concrete and particularized injury for purposes of standing. See Arroyo v. PHH Mortg. Corp., No. 13-CV-2335, 2014 WL 2048384, at \*5 (E.D.N.Y. May 19, 2014) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." (quoting Lujan, 504 U.S. at 560)).

As an initial matter, there is no basis for Kema to argue she was injured by the challenged designations to the Alliance Account because Kema was never, at any point, a listed beneficiary with an interest in the Account. Instead, Kema's

claimed injury is premised upon her belief she should be a beneficiary of Bollmann's estate. Kema contends that, as a beneficiary to the estate, she would be injured if the disputed funds are paid to Payne, and the other designated beneficiaries of the Alliance Account, because the funds should become part of Bollmann's estate. However, the Court finds the injury Kema alleges is not personal to her, but, instead, a speculative injury to Bollmann's estate. Nor is Kema able to establish standing to bring her claim on behalf of Bollmann's estate because she has not established her rights as a beneficiary to the estate. Cf. Bartone v. Podbela, No. 17-CV-3039, 2018 WL 1033250, at \*8 (E.D.N.Y. Feb. 23, 2018) (granting dismissal motion where plaintiff's alleged injury was that "the Decedent's estate was deprived of certain monies" but where plaintiff had not proven he was an estate beneficiary with standing to pursue a claim on behalf of the estate); see also Yien-Koo King v. Wang, No. 14-CV-7694, 2017 WL 2656451, at \*5 (S.D.N.Y. June 20, 2017) (holding plaintiff did not have standing to bring claims on behalf of estate where subject wills remained contested and plaintiff's status as a beneficiary of the estate had not yet been determined).

"[A]bsent extraordinary circumstances," actions on behalf of an estate "may only be brought by an executor or administrator of an estate." Thea v. Kleinhandler, No. 13-CV-4895, 2014 WL 2111637, at \*5 (S.D.N.Y. May 13, 2014) (citation omitted) (collecting cases). "[E]xtraordinary circumstances may be implicated where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate." Id. (quoting Lewis v. DiMaggio, 115 A.D.3d 1042, 1044 (3rd Dep't 2014) (alteration in original)). "Under those extraordinary circumstances, actions on behalf of an estate must be brought by beneficiaries or legatees." Bartone, 2018 WL 1033250, at \*8 (citing Witzenburg v. Jurgens, 2007 WL 9710763, at \*9 (E.D.N.Y. Mar. 1, 2007)).

**\*8** Thus, while Payne is the Administrator of Bollman's estate, because Kema is neither a beneficiary nor a legatee of the estate, even if, arguendo, extraordinary circumstances might have existed warranting challenging Payne's administration of the estate, Kema would be ineligible to bring an action on behalf of the estate to make such a challenge. Moreover, and of significance, Kema does not dispute that the Probate Court previously adjudicated Kema's claims at the August 28 Hearing. Further, as stated by the Court at the December Hearing, the Probate Court's ruling on this issue is res judicata here. See Barash v. N. Tr. Corp., No. 07-CV-5208, 2009 WL 605182, at \*7 (E.D.N.Y. Mar. 6,

Case 9:22-cv-00487-MJK    Document 113    Filed 07/11/25    Page 16 of 23

Prudential Insurance Company of America v. Payne, Not Reported in Fed. Supp. (2024)

2024 WL 707299

2009) ("Under the doctrine of res judicata, otherwise known as claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. The doctrine applies only if (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." (internal quotations and citations omitted)).

Additionally, even if the Probate Court's determinations were not res judicata, this Court is without jurisdiction to: (1) declare Phillip an "estranged parent" within the meaning of E.P.T.L. § 4-1.4(a)(1); (2) subsequently determine Kema is a beneficiary to Bollmann's estate pursuant to E.P.T.L. § 4-1.1; or (3) find Payne's Letters of Administration were fraudulently obtained. Indeed, such determinations would implicate the probate exception to federal jurisdiction.[13] See Kaufman v. Jetson Electric Bikes, LLC, No. 22-CV-3765, 2024 WL 66036, at *3 (E.D. Pa. Jan. 5, 2024) (declining to "apply the intestate law of forfeiture and hold that [biological parent] deserted [child] within the meaning of" the Pennsylvania intestate statute because, inter alia, "such a determination is barred by the probate exception"); see also id. ("Applying the intestate law of forfeiture to determine who is an heir and who is entitled to take from the estate places this matter squarely in the second probate exception by endeavoring to administer an estate." (citing Thorpe v. Borough of Thorpe, No. 3:CV-10-1317, 2013 WL 1703572, at *7 (M.D. Pa. Apr. 19, 2013), rev'd on other grounds, 770 F.3d 255 (3d Cir. 2014))).

[13]    "The probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Architectural Body Rsch. Found. v. Reversible Destiny Found., 335 F. Supp. 3d 621, 633 (S.D.N.Y. 2018) (quoting Marshall v. Marshall, 547 U.S. 293, 311-12 (2006) (emphasis added)); cf. King v. Shou-Kung Wang, 663 F. App'x 12, 13 (2d Cir. 2016) ("Post-Marshall, the probate exception is to be construed narrowly, such that unless a federal court is endeavoring to (1) probate

or annul a will, (2) administer (or invalidate the administration of) an estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court, the probate exception does not apply." (citing Leftkowitz v. Bank of N.Y., 528 F.3d 102, 105-06 (2d Cir. 2007) (emphasis added))).

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Payne's Motion for Summary Judgment (ECF No. 79) is GRANTED and Kema's claims are DISMISSED. The Clerk of Court is directed to disburse the funds as follows:

First, in accordance with the parties' November Settlement Agreement (ECF No. 54): (1) $12,048.48 to Sabine Assmus; and (2) $12,048.48 to Kirsten Assmus. Checks reflecting these dispersal amounts shall be mailed to the parties at their respective addresses of record, to wit:

> Sabine Assmus
> Meiner Str. 47b
> Weinbohla 01689
> Germany

> Kirsten Assmus
> Meiner Str. 49
> Weinbohla 01689
> Germany

Second, the remaining balance of funds deposited into the Court, including, but not limited to, any and all interest accrued on the funds, if any, to Jessica A. Payne. A check reflecting these dispersal amounts shall be mailed to Jessica A. Payne at her address of record, to wit:

> *9
> Jessica A. Payne
> 2625 Alcatraz Avenue, #103
> Berkeley, California 94705

**All Citations**

Not Reported in Fed. Supp., 2024 WL 707299

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    9

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 2:20-CV-03683**<br>The Prudential Insurance Company of America v. Payne et al | — | E.D.N.Y. | Aug. 13, 2020 | Docket |

**History (3)**

**Direct History (1)**

1. Prudential Insurance Company of America v. Payne ⌐
   2024 WL 707299 , E.D.N.Y. , Feb. 20, 2024

**Related References (2)**

2. The Prudential Insurance Company of America v. Payne
   2021 WL 3023236 , E.D.N.Y. , July 16, 2021

3. Prudential Insurance Company of America v. Payne
   2022 WL 393633 , E.D.N.Y. , Feb. 09, 2022

2011 WL 6934493
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul TOPOLSKI, Plaintiff,
v.
J.J. COTRELL, Police Officer, Defendant.

No. 5:11–CV–1216 (MAD/ATB).
|
Oct. 28, 2011.

**Attorneys and Law Firms**

Paul Topolski, pro se.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent to the court for review this complaint, together with an application to proceed *in forma pauperis* (IFP) from *pro se* plaintiff, Paul Topolski. (Dkt.Nos.1, 2).

**I.** *IFP Application*
The statute governing IFP actions provides that the court may authorize the commencement of a civil action without the payment of fees, when the plaintiff files an affidavit that includes a statement that he is unable to pay the required fee or give security therefor. 28 U.S.C. § 1915(a)(1). Plaintiff in this case has filed a form-motion to proceed IFP. (Dkt. No. 2). A review of the application shows that plaintiff's IFP application may properly be granted.

**II.** *Complaint*
In his complaint, plaintiff alleges that on September 9, 2009, he was assaulted during his arrest by defendant Cottrell, a Police Officer in the Town of Cicero in Onondaga County. (Dkt. No. 1 at 7) . [1] Plaintiff also claims that defendant Cottrell placed the handcuffs on plaintiff "extremely" tightly. (*Id.* at 7–8) Plaintiff alleges that he sustained serious, permanent injuries as a result of this assault. (*Id.* at 8). The complaint lists five causes of action, based on the same incident, and raising a variety of federal and New York State constitutional claims. Plaintiff seeks injunctive as well as substantial monetary relief. (*Id.*) For a more complete statement of the facts, reference is made to the complaint.

[1]    Plaintiff has attached a self-written complaint to a formcivil rights complaint. (Dkt. No. 1). The court will cite to the pages assigned by the court's electronic filing system (CM/ECF) because the first page of the narrative portion of the complaint appears at pages 7–11 of the document. (*Id.*)

**III. Temporary Restraining Order (TRO)**
In the body of the complaint, plaintiff states that he "also request [sic] that the court Order ... pursuant to FRCP 65, a preliminary restraining order: which would permit plaintiff to restrict said Officer J.J. Cottrell ... from filing chapter 11 bankruptcy ... until after this complaint is concluded." (*Id* .) Although the request is a little unclear, based on the liberality with which *pro se* pleadings are treated, [2] this court will address this request.

[2]    *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest").

In order for the court to grant temporary or preliminary injunctive [3] relief, the party seeking the injunction has the burden to show: (i) that he is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of his claim, or (b) the existence of serious questions going to the merits of his claim and a balance of the hardships tipping decidedly in his favor. *NXIVM Corp. v. Ross Institute,* 364 F.3d 471, 476 (2d Cir.2004); *Beal v. Stern,* 184 F.3d 117, 122–23 (2d Cir.1999) (citing *Bery v. City of New York,* 97 F.3d 689, 693–94 (2d Cir.1996)).

[3]    It is unclear what plaintiff is seeking because he calls the relief a "preliminary restraining order." (Dkt. No. 1 at 8). He could be seeking a Temporary Restraining Order or a Preliminary Injunction. Because he is asking the court to stop defendant from filing bankruptcy pending the resolution of this action, rather than for a short period of time, the court assumes that plaintiff is requesting a preliminary injunction. The distinction is not determinative because the standards are

identical, and plaintiff has not met the burden of proof required for either remedy.

Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co. v. Labatt Brewing Co.,* 339 F.3d 101, 113–14 (2d Cir.2003). Speculative harm is insufficient to establish irreparable harm. *See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37 (2d Cir.1995). The burden of proving that a TRO or a preliminary injunction should be issued rests entirely on the moving party. *Fisher v. Goord,* 981 F.Supp. 140, 167 (W.D.N.Y.1997) (citing *Liddy v. Cisneros,* 823 F.Supp. 164, 173 (S.D.N.Y.1993)). Preliminary injunctions are "extraordinary and drastic" remedies and must be denied if the moving party has failed to meet his burden of proof. *Id.* (citing *Karmikel Corp. v. May Dep't Stores Co.,* 658 F.Supp. 1361, 1367 (S.D.N.Y.1987)).

**\*2** In this case, plaintiff asks this court to enjoin defendant Cottrell from filing bankruptcy. Plaintiff has not established any of the factors required for temporary injunctive relief. It is unclear why plaintiff believes that defendant Cottrell would be filing for bankruptcy. This has nothing to do with the substance of plaintiff's complaint. Plaintiff may believe that he will secure his ability to obtain monetary relief in this case if defendant Cottrell is "prevented" from filing bankruptcy. However, plaintiff has not shown that this alleged harm is "certain" or "imminent." Plaintiff has not established, either that defendant Cottrell is planning on filing for bankruptcy, or that plaintiff would be irreparably injured if the defendant did file for bankruptcy. Thus, to the extent that plaintiff's complaint may be interpreted as moving for a TRO or preliminary injunction, this court will recommend denying plaintiff's motion.

**WHEREFORE,** based on the above, it is

**ORDERED,** that plaintiff's *In Forma Pauperis* Application (Dkt. No. 2) is **GRANTED.** [4] The Clerk shall issue a summons and forward it, along with a copy of the complaint to the United States Marshal for service upon the named defendant, and it is further

[4] The court notes that although plaintiff's application to proceed *in forma pauperis* has been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

**ORDERED,** that a formal response to plaintiff's complaint be filed by the defendant or defendant's counsel as provided in the Federal Rules of Civil Procedure subsequent to service of process on the defendant, and it is further

**ORDERED,** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. *Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys may be stricken by the Court.* Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District, and it is further

**RECOMMENDED,** that, to the extent that plaintiff's complaint can be read to contain a motion for a TRO or preliminary injunction, it be **DENIED,** and it is further

**ORDERED,** that the Clerk serve a copy of this Order upon Plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 6934493

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 5:11cv01216**<br>TOPOLSKI v. COTTRELL | — | N.D.N.Y. | Oct. 11, 2011 | Docket |

**History (3)**

**Direct History (2)**

1. Topolski v. Cotrell
   2011 WL 6934493 , N.D.N.Y. , Oct. 28, 2011

*Report and Recommendation Adopted by*

2. Topolski v. Cottrell
   2011 WL 6934268 , N.D.N.Y. , Dec. 30, 2011

**Related References (1)**
3. Topolski v. Cottrell
   2012 WL 3264927 , N.D.N.Y. , Aug. 09, 2012